Next case this morning is Robert K. Dee, Jr. v. Borough of Dunmore Thank you. Thank you, Ms. Pollack. Ms. Brennan? May it please the Court, my name is Erin Brennan and I'm here representing the Borough of Dunmore in this matter. If I may, I'm going to start where Attorney Pollack left off and address her issues. On the issue of the reasonableness of the rate, I think it's always important to remember the standard that this Court has to review, the reasonableness of the rate, and it's an abuse of discretion standard. Judge Caputo, in his opinion, delineated what the law was that applied. He recognized that there's a burden-shifting analysis that applies. He recognized that the plaintiff has to establish a prima facie case. That's why the Plaintiff's Counsel has to submit affidavits. That's part of the burden of establishing the prima facie case. Once that prima facie case is established, then it's incumbent upon the defendant to produce evidence of record, as you stated, that is contradictory or shows that the rate is not reasonable. In this case, Dunmore Borough did that by citing to three cases, I believe, the Guarneri case, the Lohman case, and the Smith case. They're all comparable cases. They were all tried by the same counsel around the same period. They all awarded an attorney fee of $215 an hour. All of those cases, the rulings in them were between 2009 and 2011, were all affirmed by this Court. So it's your position that it's appropriate to consider rates set if you have like circumstances, and it's from your point of view, the way you can present that to the Court is simply by citing it in a brief. You don't need to put it in an evidentiary document. Am I correct? Correct, Your Honor. And I recognize it is not, I don't advocate that a, I think all those criteria have to be met. It has to be the same attorney, the same type of case, a contemporaneous event. And a panel of this Court in the Kerry case, which Judge Caputo cited to in his opinion, recognized on the fee, on the appeal on the fee issue in that case that defendants had, in the case below, properly provided evidence of record by citation to the same Lohman case. So again, I think it's appropriate to consider that. And so you don't take issue with the judge, the district court here, rejecting the cases you cited, your client cited, and citing his own collection of cases to set a rate higher than the rate you advocated, correct? I think that's actually a perfect example of how the trial court judge was using his discretion to render what was a reasonable rate. He took the plaintiff's submissions, arguing for a fee award of $300 an hour. He considered the defendant's evidence of record, arguing for a fee of $215 an hour. He looked independently at cases, which again, contemporaneous, same counsel, same type of cases, in which $250 an hour had been rewarded and $225 an hour had been awarded. And that $225 award was affirmed by this Court. So in weighing all of those things together, he came to the conclusion that $250 an hour was the reasonable award in this case. I believe that is within his discretion to do. I don't believe it is appropriate to – that there's authority to overturn that decision, unless there's clearly erroneous decision-making by the judge, and that this Court can find that no reasonable person, when viewing that compilation of evidence, could not find that $250 an hour was reasonable. Moving from the rate, again backwards, addressing the argument as it went before, in the Smith case, the 64.1 hours there, I think the difficulty with that is, counsel argues, and I understand the argument, look, in Smith the Court said there were 64.1 hours that were attributable to both – the mutual benefit of both Smith and D, or just attributable to D that were carried on the Smith fee sheets. The problem is, we can't – there's been nothing to show, and we can't presume, that the fee sheets for Smith carried over exactly the Smith and D – same Smith and D matters as did the fee sheets for D. I know when I'm working on cases and there's multiple parties or there's companion cases, sometimes you transcribe something to one client matter and not to the other. So absent a showing, and counsel had an opportunity to show that at the time of a reply brief, absent a showing that those exact hours considered by Judge Caputo were somehow not attributable to D, then I think his finding on that was correct as well. And again, that is an abuse of discretion standard. On the Rule 68 offer of judgment, the offer of judgment was made in a timely fashion. It was made more than 14 days before the initial second trial was scheduled. And it did contain a condition of no admission of liability, but that was just part of the offer. You're allowed to have that condition in there. Plaintiff did not have to accept it, and in fact, plaintiff did not accept it. And I don't understand the argument, or I don't think the argument holds weight, that, well, now Mr. D can say to any potential future employee, well, look, I was vindicated on this. As Your Honor pointed out, the second trial was solely on the calculation of damages. And really, comparing apples to apples, the offer of judgment was $60,000 plus an ability to petition the court for costs, and the ultimate verdict was $47,000 plus an ability to petition the court for costs. $60,000 plus costs is more than $47,000 plus costs. This was in a situation where there was a request for equitable relief. Had there been a request for equitable relief and the plaintiff received it, perhaps then that would weigh differently in the balance. And the final matter is what D has termed as the double deduction. And again, I think what, again, the standard there is abuse of discretion. But we start with the load star, which is obviously reasonable hours times the reasonable rate. That's the starting point. And I think the case law is clear. The Hensley case relied upon by the court. But even the Purdue case that was cited by D at argument, the load star isn't always going to be sufficient in and of itself. All right, let's agree with that. Okay. But this is a large reduction. Absolutely. It's more than a 50% reduction. Absolutely. How do we endorse that sort of reduction when the district court did not give what one might consider a fulsome explanation of why that was appropriate? Well, again, I think it was within the district court's discretion. The district court did articulate in its opinion that, look, Hensley doesn't give any clear criteria as to how you get to a reduction when it's necessary. And the district court considered specifically in its opinion the fact that the ultimate recovery in this case was recovery on one claim out of five claims. And it was an ultimate recovery for $47,500. But doesn't the fact that there was recovery on one claim, wasn't that already taken into account when the district court reduced the fee award by 18.1 hours? And isn't that a double count? No, I don't think that is a double count. I think that the reduction of the 18.1 hours is representative of time that is clearly identified as specifically attributable to an unsuccessful claim. So then we take that out to get to the Lodestar. When we get to the Lodestar, under Hensley, one of the primary considerations is degree of success. And the four unsuccessful claims in this case were not based on the same nucleus of operative fact. The successful claim was related to Mr. D's procedural due process claim relative to his eight-day paid suspension from work. The other four claims, the stigma plus claim and state law claims for invasion of privacy, et cetera, were related to the publication in the newspaper of that suspension. So they're different underlying facts. Right, and so the judge slashed the bill by 18.1 hours to reflect that lack of success on those claims. I think that 18.1 hours, though, was specifically attributable on the time sheets for a lack of success. So you're saying that because he believed there was more time? I'm saying because the degree of success, when you got to the end, the ultimate award to the plaintiff was $47,500. The fee request was $230,000 approximately. The Lodestar was $123,000 approximately, I believe. So isn't the law that you shouldn't be looking at the proportionality between the recovery and the fee? Or are you saying that that's an appropriate consideration? I'm sorry, can you repeat that again? That there's a proportionality between the Lodestar – sorry, the fee award and the recovery? You're not allowed to – we shouldn't be considering proportionality, right? I don't – and the judge didn't apportion anything, but I think it is appropriate to consider the ultimate degree of success. Okay. So which is what the – So I guess that's a way of saying the judge can sort of equitably reduce or increase the fee award as long as there's not sort of a mathematical precision of, well, you succeeded on 20% of your case, so I'll give you 20% of the fees. Is that where we are? Yeah, I mean, that's pretty close to where we are. And I think part of the mathematical precision is, you know, I can't – although I believe, and I'm a latecomer to this case, so I was not involved at the trial level, but if my recall serves me correctly, the argument by defendants was for a specific apportionment of claims, and the district court didn't do that. The problem, obviously, with doing that is you can't say, well, you were 1-6 successful, so I'm just going to cut everything wholesale. Instead, it's left to the trial court's discretion. The judge exercised that discretion. And it's important to remember also the point of allowing attorney's fees in these type of cases. The intent is to encourage and entice competent counsel to take these types of cases. It's not to produce a windfall to counsel in the ultimate award of attorney's fees. Ms. Brennan, what's your view as to the extent to which the district court may consider the Johnson factors in reducing the lodestar? Again, I think that the Johnson factors can be considered. I don't think that – I think Judge Caputo relied primarily on the degree of success. He acknowledged in his opinion, I think in a paragraph laid out in his opinion, that this type of case was not something novel for Attorney Pollack, who's very experienced in this type of case, that it did not present a particularly rigorous or novel issue of law. And those would all fall under Johnson. But wouldn't the fact that it wasn't novel for this lawyer get factored into what her hourly rate was, and wouldn't that be a double count? I mean, I don't think so in that counsel's overall experience would get factored into the determination of an hourly rate. For example, juxtaposed to Attorney Barry Diller, who had substantially more experience, or to somebody who had lesser experience. So overall experience in that regard would get factored into the hourly rate. I don't think that that overall experience gets factored in at the Johnson level. It's simply specified this particular case is not a – does not present a novel or particularly rigorous exercise for a counsel who's highly skilled in that type of case. I imagine she would have something to say about how much it took, because did this case go up and down from this court back to the district court one time? Yes. Yes. I imagine. But I will leave you with that. I think the standard here as abuse of discretion is a high standard, and I don't think that there's anything in record that is clearly erroneous in Judge Computer's findings, and therefore I respectfully ask that this court affirm the decision below. Thank you very much. Thank you, Ms. Brennan. Rebuttal, Ms. Pollack? Yes, Your Honor. It's a plenary review. It is not abuse of discretion. That's your Washington case versus Philadelphia County Court of Common Pleas 1996. There is no discretion when it comes to the hourly rate. It's what's ever in the record. What if Ms. Brennan or her predecessor counsel submitted an affidavit that said simply, I was counsel in Smith and the other two cases, and I aver under penalty of perjury or I declare under penalty of perjury that Attorney Pollack was awarded $250 per hour in those cases, and those cases spanned a time frame from 2005 to 2012. If an affidavit like that of counsel had been submitted that simply recounted what had happened in those cases, then where would we be? Because it's not the market rate at the time of the verdict. It's whatever the going rate is. It's not based on a historical billing rate that plaintiff's counsel got. I'm using a contemporary. I'm presupposing contemporaneity among the cases. It still is not. If they had submitted an affidavit. And I would not credit that because of the fact it's not an affidavit of the market. What's the market paying? The market's paying, as I said, someone with six years less experience than me gets $300. So you're saying an attorney who files an affidavit at your request on your behalf saying what the market rate is, that's competent evidence in determining a fee award, but what a district judge in the same district involving similar cases involving similar or the same lawyers adjudicates to be a market rate, that doesn't count? It doesn't count because of the fact if it is lower than it should be, you can never increase. And the reason why we shouldn't look at historical, because in this case the court vaulted me that I didn't have this, didn't have that. Well, this time I kept bringing more evidence, more evidence, showing that I should get the $300 rate because that is the rate that you just gave to someone. How do you distinguish the fact that you just gave that to a gentleman who has, this was his first trial, he's had six years less experience than me, but yet I cannot achieve that same rate that you have just given him. And that the three lawyers that you paid for that case, their total hourly rate was $900. What if the district court had, these other parents were the other cases where the rate was higher? They awarded $325 to an attorney who has exactly your pedigree, just not you, but exactly your pedigree, same geographic. Wouldn't you be embracing those and bringing those cases to the court's attention? Well, I have shown what people have gotten paid, and I still have not, unfortunately, been successful to get this paid the same as my colleagues. I have gotten affidavits from other people saying, Cindy, we can attest to them, but just has not been successful. And to me, what more could I ask? And I just want to talk about the, could I just, about the First Amendment press communication? I'll stop there. It wasn't raised initially, so we understand the argument from the base. Okay, thank you. Thank you, Ms. Pollack. Thank you to counsel, and the court will take the matter under advisement. Thank you.